UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAM SMITH (#241580),

|  | CASE NO. 2:10-CV-13763 |
| Plaintiff, | JUDGE PAUL D. BORMAN |
|  | MAGISTRATE JUDGE PAUL J. KOMIVES |

v.

LEERAY STEPHENS,
JOHN DOE, ALI MUHAMMAD,
ALICIA SMITH, BRIAN STAIR,
and KYM WORTHY,

Defendants,

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS STEPHENS,
STAIR, MUHAMMAD AND SMITH'S AUGUST 17, 2011 MOTION FOR SUMMARY
JUDGMENT (Doc. Ent. 41)**

**I.     RECOMMENDATION:**  The Court should grant defendants Stephens, Stair,

Muhammad and Smith's August 17, 2011 motion for summary judgment (Doc. Ent. 41).

**II.    REPORT:**

**A.     Background**

**1.**     On February 7, 1995, Sam Smith (#241580) was sentenced for December 15, 1994

violations of felony firearm (Mich. Comp. Laws § 750.227b), first-degree criminal sexual conduct

(Mich. Comp. Laws § 750.520b) and armed robbery (Mich. Comp. Laws § 750.529).  *See* Case

No. 99-00454 (Wayne County).  The sentences on the latter two charges were 6 - 20 years.

**2.**     On April 6, 1999, Smith was sentenced to 1 - 4 years for an October 31, 1998 violation of

assaulting an employee or escape jail (Mich. Comp. Laws § 750.197c).  *See Case* No.  99-6710-

1-FH (Chippewa County).

3.      At some point, plaintiff was paroled.  On October 11, 2007, a parole revocation hearing

was conducted.  Doc. Ent. 1 ¶¶ 36-37.  Smith's parole was revoked for five (5) years.  Doc. Ent. 1

¶¶ 38, 39.  Smith attests that "[i]n August 2010 and February 2011, the parole board considered

and denied [him] parole for several reasons, including [his] conduct since [he] was returned to

prison in 2007 and not only because of the 2007 parole violations."  Doc. Ent. 47 at 20 ¶ 7; *see*

*also* Doc. Ent. 47 at 9.  His maximum discharge date is February 1, 2018.[1]

### B.      Facts Underlying Plaintiff's Instant Complaint

1.      In general, Smith claims that, "[i]n 2007, Leeray Stephens pressured Plaintiff to be an

informant.  When Plaintiff refused, Stephens and Defendant Doe falsely arrested him for domestic

violence (which was later dismissed) and then for gun possession.  A jury acquitted Plaintiff of all

charges.  At Plaintiff's parole revocation hearing, Stephens changed his testimony, resulting in a

5-year parole revocation."  Doc. Ent. 1 at 3.

Smith also claims that, "[i]n 2008, Plaintiff asked the other defendants to investigate and

prosecute Stephens.  They refused, until Plaintiff wrote the judge in the case in which Plaintiff

was acquitted.  Defendants then said they would investigate but failed to do so.  Plaintiff suffered

a longer period of incarceration than he would have, loss of his parental rights to his only child,

and severe emotional distress, among other things."  Doc. Ent. 1 at 3.

2.      Smith also makes specific allegations about the facts underlying plaintiff's complaint,

which span the period from December 2006 to March 5, 2010.  Doc. Ent. 1 ¶¶ 10-63.

---

[1]Unless  otherwise  noted,  the  information  in  this  section  was  obtained  from
www.michigan.gov/corrections,  "Offender Search."

2

Among other allegations, Smith contends that he was arrested on March 16, 2007 by Stephens and was charged with carrying a concealed weapon, firearm possession by a felon, and felony firearm. Doc. Ent. 1 ¶¶ 26, 33, 34. On July 11, 2007, a jury acquitted him of the charges. Doc. Ent. 1 ¶ 35.[2]

Smith states that his parole revocation hearing was conducted on October 11, 2007, at which Stephens allegedly gave perjured testimony. Doc. Ent. 1 ¶¶ 36-37. According to Smith, Stephens gave testimony "that was materially opposed to the testimony he gave at Plaintiff's trial on the criminal charges." Doc. Ent. 1 ¶ 37. The hearing officer found that plaintiff "had possessed a firearm, in violation of his parole[,]" and Smith's parole was revoked for five (5) years. Doc. Ent. 1 ¶¶ 38, 39.

Smith claims that he received the transcripts from his 2007 gun trial on May 2008; thereafter, he "sought administrative remedies for Stephens' wrongful conduct[.]" Doc. Ent. 1 ¶¶ 40-41. On July 18, 2008, plaintiff wrote to Worthy. Doc. Ent. 1 ¶ 41. Smith claims that Worthy referred him to DPD Internal Affairs on August 4, 2008. Doc. Ent. 1 ¶ 42.

According to Smith, he wrote to Internal Affairs but did not receive a response. Doc. Ent. 1 ¶ 43. On November 3, 2008, he wrote to Assistant Wayne County Prosecutor Maria Petito; Petito responded on December 12, 2008. Doc. Ent. 1 ¶¶ 44-45.

On December 22, 2008, Smith wrote to the trial judge in his gun case (Judge Gregory D. Bill). Doc. Ent. 1 ¶ 46. Judge Bill responded with a letter dated February 6, 2009, saying "he had

---

[2]Smith does not provide the case number but does state that the trial judge was the Honorable Gregory D. Bill (Wayne County Circuit Court). *See* Doc. Ent. 1 ¶ 46, www.michbar.org, "Member Directory."

no authority to investigate but that he forwarded Plaintiff's letter to Prosecutor Kym Worthy." Doc. Ent. 1 ¶ 47.

On or about March 5, 2009, Worthy responded, "saying that Plaintiff could submit his complaint to DPD Internal Affairs[,]" and copied Judge Bill and Commander Brian Stair of Detroit Police Department Internal Affairs.  Doc. Ent. 1 ¶ 48.  Plaintiff claims he promptly, "and for the second time," submitted documentation to DPD Internal Affairs.  Doc. Ent. 1 ¶ 49.

Plaintiff contends he received no response and wrote to Worthy on June 4, 2009.  Doc. Ent. 1 ¶ 50.  Ali Muhammad of DPD Internal Affairs contacted plaintiff via a June 15, 2009 letter. Doc. Ent. 1 ¶ 51.  Smith and Muhammad spoke on the phone on July 22, 2009.  Doc. Ent. 1 ¶ 52-53.  Smith wrote to Muhammad that same day.  Doc. Ent. 1 ¶ 54.

Thereafter, plaintiff wrote several letters.  He wrote to Worthy on July 23, 2009, to Muhammad on September 21, 2009, to Detroit Mayor Dave Bing on October 7, 2009, to the Detroit Chief of Police on October 9, 2009, and to Worthy on October 13, 2009.  Doc. Ent. 1 ¶¶ 55-59.

On October 14, 2009, Sergeant Alicia L. Smith of DPD Internal Affairs wrote to plaintiff Smith, asking for documents.  Doc. Ent. 1 ¶ 60.  Plaintiff Smith mailed a third copy of documentary evidence to DPD Internal Affairs on October 23, 2009.  Doc. Ent. 1 ¶ 61.  The documents were received by E. Henry of DPD Internal Affairs on October 30, 2009.  Doc. Ent. 1 ¶ 62.

On March 5, 2010, Commander Brian R. Stair of DPD Internal Affairs sent plaintiff a "form" letter, which stated, "An investigation by Internal Affairs was conducted regarding your complaint and concluded with a finding of 'Not Sustained.'"  Doc. Ent. 1 ¶ 63.

C.     **The Instant Complaint**

Smith is currently incarcerated at the MDOC's Alger Correctional Facility (LMF) in

Munising, Michigan.  On September 21, 2010, while incarcerated at LMF, he filed this prisoner

civil rights complaint.  Doc. Ent. 1.[3]  In plaintiff's words, "[t]his case involves Detroit Police

Department (DPD) officers['] retaliation against Plaintiff for his refusal to act as a confidential

informant (CI)."  Doc. Ent. 1 at 5 ¶ 10.  Plaintiff names six (6) defendants in his complaint:

Leeray Stephens, John Doe, Ali Muhammad, Alicia Smith, Brian Stair and Kym Worthy.  Doc.

Ent. 1 at 4-5 ¶¶ 2-7.

Plaintiff's ten (10) causes of action include:

```
COUNT I:      ILLEGAL SEIZURE, 4TH AMENDMENT
COUNT II:     RETALIATION, 1ST AMENDMENT
COUNT III:    MALICIOUS PROSECUTION, 4TH AMENDMENT
COUNT IV:     FALSE ARREST
COUNT V:      FALSE IMPRISONMENT
COUNT VI:     ABUSE OF PROCESS
COUNT VII:    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
COUNT VIII:   FRAUD OR MISREPRESENTATION
COUNT IX:     FRAUD OR MISREPRESENTATION
COUNT X:      CONSPIRACY
```

Doc. Ent. 1 ¶¶ 73-104.  Plaintiff seeks compensatory, declaratory and injunctive relief.  Doc. Ent.

1 at 14.

Plaintiff also filed an application for prisoner to proceed without prepayment of fees or

costs. Doc. Ent. 2.  On September 28, 2010, Magistrate Judge Whalen entered an order waiving

prepayment of the filing fee and directing payment of the initial partial filing fee and subsequent

---

[3]Shortly thereafter, on September 30, 2010, plaintiff filed *Smith v. Davidson, et al.*, Case No. 4:10-cv-13898-MAG-RSW (E.D. Mich.), which, as stated by plaintiff, "involves the intentional and grossly negligent acts and omissions of state officials, which prevented plaintiff from asserting his parental rights."  Doc. Ent. 1 ¶ 14.

payments (Doc. Ent. 4) and an order directing service without prepayment of costs and
authorizing the United States Marshal to collect costs after service is made (Doc. Ent. 5).

Defendants Stair, Muhammad, Alicia Smith, Stephens and Worthy have each filed
answers to plaintiff's complaint, and each lists the defense of statute of limitations. *See* Doc. Ent.
7 (Stair and Muhammad),[4] Doc. Ent. 12 (Alicia Smith),[5] Doc. Ent. 14 (Stephens),[6] Doc. Ent. 15
(Worthy).[7]  Attorneys Jerry L. Ashford and John A. Schapka, both of the City of Detroit Law
Department, have appeared on behalf of defendants Stephens, Muhammad, Smith and/or Stair.
Attorney Margaret M. Flanagan of Wayne County Corporation Counsel has appeared on behalf of
defendant Worthy.[8]

### D.   Defendants Stephens, Stair, Muhammad and Smith's August 17, 2011 Motion for Summary Judgment (Doc. Ent. 41)

Currently before the Court is defendants Stephens, Stair, Muhammad and Smith's August
17, 2011 motion for summary judgment.  Doc. Ent. 41.  Therein, defendants address:

a.   Impact of Applicable Period of Limitations on Plaintiff's State Law False
Arrest, False Imprisonment, and Malicious Prosecution Claims

b.   Impact of Applicable Period of Limitations on Plaintiff's Federal
Constitutionally Predicated Claims

---

[4]"The applicable statutes of limitation may have lapsed prior to the filing of Plaintiffs'
Complaint with respect to some or all of Plaintiff's claims."  Doc. Ent. 7 at 4.

[5]"The applicable statutes of limitation may have lapsed prior to the filing of Plaintiffs'
Complaint with respect to some or all of Plaintiff's claims."  Doc. Ent. 12 at 4.

[6]"The applicable statutes of limitation may have lapsed prior to the filing of Plaintiffs'
Complaint with respect to some or all of Plaintiff's claims."  Doc. Ent. 14 at 4.

[7]"Plaintiff's claims may be barred under the applicable limitations periods."  Doc. Ent. 15
at 3.

[8]Judge Borman has referred this case to me to conduct pretrial matters.  Doc. Ent. 11.

6

    c.       The Impact of *Heck v Humphrey* on Plaintiff's Claims in Whole

    d.       Testimonial Immunity

    e.       Duty to Investigate

Doc. Ent. 41 at 11-19.  Attached to the motion are plaintiff's June 10, 2011 deposition transcript (Doc. Ent. 41-2 [Exhibit 1]), as well as copies of the following: *Burkette v. Waring*, No. 10-10230, 2010 WL 2572930 (E.D. Mich. June 22, 2010) (Edmunds, J.) (Doc. Ent. 41-3 [Exhibit 2]); *Smith v. Sampson*, No. 2:10-cv-10363, 2010 WL 750195 (E.D. Mich. Mar. 3, 2010) (Duggan, J.) (Doc. Ent. 41-4 [Exhibit 3]); and *Jackson v. Waterberry*, No. 10-10031, 2010 WL 5559326 (E.D. Mich. Nov. 30, 2010) (report and recommendation of Randon, M.J.) (Doc. Ent. 41-5 [Exhibit 4]).

       On August 17, 2011, I entered an order requiring any response to be filed by September 12, 2011.  Doc. Ent. 42.  However, on September 1, 2011, the Court was informed that the copy of this order mailed to the MDOC's Alger Correctional Facility (LMF) in Munising, Michigan was returned as undeliverable.  Doc. Ent. 45.[9]  Nonetheless, on September 27, 2011, plaintiff filed a response (Doc. Ent. 47 at 1-2), a brief (Doc. Ent. 47 at 3-19) and an affidavit (Doc. Ent. 47 at 20).

**D.**    **Discussion**

       The parties agree that "Plaintiff's claims arise from his March 16, 2007, arrest and subsequent prosecution, and eventual parole revocation."  Doc. Ent. 41 at 2 ¶ 4; Doc. Ent. 47 at 1 ¶ 4.  Still, it is noteworthy that defendants' August 17, 2011 arguments presently before the Court are based upon the September 21, 2010 inception of this case (Doc. Ent. 41 at 1, 12 & 13), while

---

      [9]Smith is currently incarcerated at LMF.  *See* www.michigan.gov/corrections, "Offender Search."

plaintiff's September 27, 2011 response (Doc. Ent. 47 at 9-11) clearly refers to the August 8, 2011 first amended complaint (Doc. Ent. 36), which was stricken on March 2, 2011 (Doc. Ent. 55).

## 1.   INITIAL MATTERS

Plaintiff contends that "[d]efendants' motion for summary judgment relies on evidence and exhibits that [d]efendants did not serve on [p]laintiff." Doc. Ent. 47 at 2 ¶ 10.  Plaintiff also contends that, "[a]s an incarcerated, pro se litigant who has been granted leave to proceed in forma pauperis, Plaintiff has no independent access to his deposition transcript or the unpublished cases cited by Defendants, and Plaintiff's prison law library contains only published federal case reporters for the United States District, Circuit, and Supreme Courts from the year[s] 1970 to 2011."  Doc. Ent. 47 at 2 ¶ 12.  *See also* Doc. Ent. 47 at 20 ¶¶ 3, 4.

Furthermore, plaintiff contends that he "previously served a Request for Production of Deposition of Sam Smith on Defendants, but Defendants never complied, and Plaintiff filed a motion to compel this discovery request, which is still pending."  Doc. Ent. 47 at 2 ¶ 11.[10]  *See*

---

[10]By way of background, plaintiff has filed three motions to compel.  Plaintiff's March 24, 2011 motion to compel (Doc. Ent. 16) concerned his December 10, 2010 interrogatories to defendants.  I entered an order deeming this motion moot (Doc. Ent. 21).  On May 31, 2011, plaintiff appealed my order (Doc. Ent. 22).  Therein, plaintiff asserted that, on or about May 4, 2011, he received interrogatory answers from each defendant except Smith; still, plaintiff took issue with the sufficiency of such answers.  Subsequently Judge Borman entered an order denying plaintiff's appeal of my order (Doc. Ent. 31).

Plaintiff's June 30, 2011 motion to compel (Doc. Ent. 32), which is still pending before this Court, concerns plaintiff's May 20, 2011 Rule 34 request to defendant Muhammad (concerning interviews).  No response to this motion has been filed.

Plaintiff's July 18, 2011 motion to compel (Doc. Ent. 33), which is still pending before this Court, concerns a June 13, 2011 request for production of documents from defense counsel (concerning requesting a transcript of plaintiff's June 10, 2011 deposition from defense counsel, as well as other matters) and a June 15, 2011 discovery requests to defendants.  Doc. Ent. 33 ¶¶ 13, 14.  No response to this motion has been filed.

*also* Doc. Ent. 47 at 20 ¶ 5.  Plaintiff attests that "[w]ithout access to the Deposition of Sam Smith and other requested discovery materials and Defendants' exhibits, I cannot present facts essential to oppose Defendants' motion for summary judgment."  Doc. Ent. 47 at 20 ¶ 6.

Because this report and recommendation is based upon questions of law, *i.e.*, statute of limitations and whether plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court need not address plaintiff's arguments that he did not receive copies of the attachments to defendants' motion at bar or that he has outstanding discovery requests.

**2.    STATUTE OF LIMITATIONS AS TO STATE LAW FALSE ARREST, FALSE IMPRISONMENT AND MALICIOUS PROSECUTION CLAIMS (COUNTS III, IV, V & VI)**

Plaintiff's complaint alleges several state-law causes of action.  In this regard, defendants argue that plaintiff's false arrest and false imprisonment claims "accrued on the date of his arrest, March 16, 2007[,]" and his malicious prosecution claim "accrued on the date of his acquittal, July 11, 2007."  Doc. Ent. 41 at 11-12.  Citing Mich. Comp. Laws § 600.5805, it is defendants' position that "the [two-year] period of limitations applicable to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims ran prior to his initiation of this action."  Therefore, defendants contend, "Counts III, IV, V, and VI of [plaintiff's] complaint . . . are time barred and must be dismissed."  Doc. Ent. 41 at 12.

Mich. Comp. Laws § 600.5805 ("Injuries to persons or property") provides that "the period of limitations is 2 years for an action charging assault, battery, or false imprisonment[,]" Subsection (2); "[t]he period of limitations is 2 years for an action charging malicious prosecution[,]" Subsection (5); "[t]he period of limitations is 2 years after the expiration of the

year for which a constable was elected for actions based on the constable's negligence or misconduct as constable[,]" Subsection (8); and ""

In response, plaintiff claims that "[d]efendants should be equitably estopped from raising the [two-year] statute of limitations defense to Plaintiff['s] state-law false-arrest and imprisonment claims because they falsely induced him not to timely pursue those claims." Doc. Ent. 47 at 1 ¶ 5. In other words, plaintiff claims defendants "falsely induced him to forego those claims." Doc. Ent. 47 at 12-14.

To be sure, plaintiff agrees that his false arrest and false imprisonment claims accrued on March 16, 2007 - the date of his arrest; however, he argues that "[d]efendants should be equitably estopped from asserting this defense." Doc. Ent. 47 at 13.[11] In support of this argument, he cites *Lothian v. City of Detroit*, 414 Mich. 160, 177, 324 N.W.2d 9 (1982),[12] *West American Ins. Co. v. Meridian Mutual Ins. Co.*, 230 Mich.App. 305, 310, 583 N.W.2d 548, 550 (Mich.App.,1998),[13] and *Tucker v. Eaton*, 426 Mich. 179, 187, 393 N.W.2d 827 (1986).[14] Doc. Ent. 47 at 13. With

---

[11]Plaintiff also claims that his first amended complaint does not contain a malicious prosecution claim. Doc. Ent. 47 at 13.

[12]"Equitable estoppel may be introduced to counter a statute of limitations defense so as 'to accomplish the prevention of results contrary to good conscience and fair dealing'[.]" *Lothian*, 414 Mich. at 177, 324 N.W.2d at 17-18 (quoting *McLearn v. Hill*, 276 Mass. 519, 524, 177 N.E. 617 (1931)).

[13]"Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *West American Ins. Co. v. Meridian Mutual Ins. Co.*, 230 Mich.App. 305, 310, 583 N.W.2d 548, 550 (Mich.App. 1998) (citing *Guise v. Robinson*, 219 Mich.App. 139, 144, 555 N.W.2d 887 (Mich.App. 1998)).

[14]"'The doctrine of estoppel rests upon a party having directly or indirectly made assertions, promises or assurances upon which another has acted under such circumstances that he would be seriously prejudiced if the assertions were suffered to be disproved or the promises or assurances

references to ¶¶ 52, 56, 66 & 69 of plaintiff's August 8, 2011 first amended complaint - which has

since been stricken by the Court's March 2, 2011 order (Doc. Ent. 55) - plaintiff claims that

defendants Muhammad, Stair and Smith "told [plaintiff] that they would 'seriously and

thoroughly investigate' his claims that Defendant Stephens falsely arrested and maliciously

prosecuted him." Doc. Ent. 47 at 13. In fact, plaintiff attests, "Muhammad, Smith, and Stair told

me that they would conduct a thorough and serious investigation of my complaints against

Stephens, I believed them, and because I believed them, I refrained from filing suit against

Stephens, believing that my complaint would be thoroughly redressed by their investigation."

Doc. Ent. 47 at 20 ¶ 8. Referring to his affidavit, plaintiff claims "[t]hese repeated representations

from officials of the Wayne County Prosecutor's office induced Plaintiff into believing that those

officials actually would 'seriously and thoroughly investigate' his claims, and Plaintiff justifiably

relied and acted on that belief by pursuing that mode of relief instead of filing a lawsuit." Doc.

Ent. 47 at 13. Again citing his first amended complaint, plaintiff contends that defendants "failed

to 'seriously and thoroughly investigate' Plaintiff's claims, thus, in effect, denying their previous

assurances." Doc. Ent. 47 at 13-14. Referring to ¶ 69 of his first amended complaint, plaintiff

states, "[t]his prejudiced Plaintiff because the false assurances were not revealed to be false until

Plaintiff received the form letter from Defendant Stair, rejecting Plaintiff's complaint on March

15, 2010." Furthermore, plaintiff asserts, even if Muhammad, Stair and Alicia Smith's

investigation was "serious and thorough," "Stephens should still be equitably estopped from

---

to be withdrawn. But as the doctrine when applied operates to take away legal rights, it is no more
than common justice to require that the facts which are supposed to call for its application shall be
unquestionable, and the wrong which is to be prevented shall be undoubted.'" *Tucker*, 426 Mich.
at 187-188, 393 N.W.2d at 831-832 (quoting *Maxwell v. Bay City Bridge Co*, 41 Mich. 453,
467-468, 2 N.W. 639 (1879)).

raising the state of limitations to Plaintiff's state-law claims because the result of the investigation was based on Stephens's original false representations that Plaintiff possessed a firearm." Doc. Ent. 47 at 14.

To be sure, the Court recognizes that plaintiff's efforts to seek an investigation of Stephens's conduct began with plaintiff's July 18, 2008 letter to Worthy (Doc. Ent. 1 ¶ 41), continued with the several letters discussed above and culminated with Stair's March 5, 2010 letter (Doc. Ent. 1 ¶ 63). However, nothing prevented plaintiff from filing his state-law claims within two-years of the March 16, 2007 accrual of his false arrest and false imprisonment claims, or, in the absence of an event which would have tolled the statute, by March 16, 2009.

## 3.   STATUTE OF LIMITATIONS AS TO FEDERAL CONSTITUTIONAL CLAIMS (COUNTS I & II)

**a.**   Plaintiff's complaint also alleges several federal constitutional claims. Defendants argue that "[p]laintiff's federal constitutionally predicated claims, Counts I and II of his complaint, are time barred[.]" Doc. Ent. 41 at 13. To the extent plaintiff is challenging the lawfulness of his March 16, 2007 arrest and the prosecution which resulted in his July 11, 2007 acquittal on the basis that these events, as characterized by defendants, "were predicated upon false reports and planted evidence[,]" it is defendants' position that such cause(s) of action "accrued, at the latest, on the date of his acquittal, July 11, 2007." Doc. Ent. 41 at 12-13. Therefore, defendants assert, "the applicable period of limitations expired, at the latest, on July 11, 2010. Doc. Ent. 41 at 13.

**b.**   "§ 1983 claims are best characterized as personal injury actions[.]" *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). As the Sixth Circuit has stated, "the proper statute of limitations to apply for 42 U.S.C. § 1983 is the Michigan three year statute of limitations period for general tort actions." *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989). Mich. Comp. Laws § 600.5805

12

("Injuries to persons or property") provides that "[e]xcept as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property." Mich. Comp. Laws § 600.5805(10).

**c.** In response, plaintiff argues that his federal law claims against Stephens "are not barred by the statute of limitations because of the continuing-violations and equitable-estoppel doctrines." Doc. Ent. 47 at 14-16. Plaintiff invokes these doctrines "to overcome the otherwise late filing of his federal claims against Stephens." Doc. Ent. 47 at 14-15.

As to the continuing-violation doctrine, plaintiff relies upon *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)[15] and *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007).[16] Citing ¶¶ 40-41 of his first amended complaint, plaintiff claims that Stephens "engaged in continuing wrongful conduct by falsely arresting Plaintiff [on March 16, 2007], then falsely accusing him, the last of which took place on October 11, 2007 [at the parole revocation hearing]." Citing the damages portion of his first amended complaint (¶¶ 72-81), plaintiff asserts that "[i]njury to Plaintiff accrued continuously because each of the above-listed violations caused a new injury," and "a claim accrues when a plaintiff knows or has reason to know of the injury which is the basis

_____

[15]"[I]n this Circuit, a 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley*, 557 F.3d at 697 (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 521 (6th Cir.1997) (citations omitted)).

[16]"This court follows the 'discovery rule,' which provides that 'the statute of limitation begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.'" *Dixon*, 492 F.3d at 671 (quoting *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 183 (6th Cir. 1990) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984))).

13

of the action[.]" Plaintiff contends that "[h]ad Stephens ceased his wrongful conduct at any time, further injury would have been avoided." Accordingly, plaintiff argues, "the statute of limitations started on the date of the last violation [October 11, 2007][;]" the three-year statute of limitations would have expired on October 11, 2010; therefore, the federal claims against Stephens in plaintiff's September 21, 2010 complaint were timely filed. Doc. Ent. 47 at 15.

As to the doctrine of equitable estoppel, plaintiff relies upon *Premo v. United States*, 599 F.3d 540 (6th Cir. 2010),[17] *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984),[18] and *Horton v. Ford Motor Co.*, 427 F.3d 382, 388 (6th Cir. 2005), wherein the Sixth Circuit stated, "[a] party must show:

> (1) conduct or language amounting to a representation of material fact;
> (2) awareness of true facts by the party to be estopped;
> (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
> (4) unawareness of the true facts by the party asserting the estoppel; and
> (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Horton*, 427 F.3d at 388 (quoting *Tregoning v. American Comty. Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir.1993) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir.1991))); Doc. Ent. 47 at 15-16. Citing Paragraphs 52, 56, 66 and 69 of his first amended complaint, plaintiff argues that defendants Muhammad, Stair and Alicia Smith "told Plaintiff that they would

---

[17]"'Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases.'" *Premo*, 599 F.3d at 547 (quoting *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (internal quotation marks omitted)).

[18]"[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse[,]' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler*, 467 U.S. at 59 (internal footnotes and citations omitted).

14

'seriously and thoroughly investigate' his claims of Stephens's misconduct."  Citing Paragraphs 70-71 of plaintiff's first amended complaint, plaintiff further claims defendants Muhammad, Stair and Alicia Smith "were aware . . . that they would not seriously and thoroughly investigate Plaintiff's complaint and that they intended that Plaintiff would act on their false assurances by continuing to pursue their sham investigation instead of filing suit against Stephens."  Plaintiff contends he was "unaware that Defendants were conducting a sham investigation (as evidenced by the fact that he continued to pursue it), and Plaintiff's reliance on [their] assurances was justifiable and detrimental to his claim against Stephens (because [plaintiff] failed to otherwise file suit within the statute of limitations)."  It is plaintiff's position that "[i]t would be an injustice if a police officer could escape liability for falsely arresting and prosecuting a citizen of this country merely because other police investigators are able to succeed in tricking the victim of that false arrest and prosecution into sitting on his rights while they pretend to investigate his claims of the officer's misconduct."  Doc. Ent. 47 at 16.

**d.**     Here too, nothing prevented plaintiff from filing his federal constitutional claims within three-years of the July 11, 2007 accrual of such claims, or, in the absence of an event which would have tolled the statute, by July 11, 2010.  Therefore, the Court should conclude that plaintiff is not entitled to equitable tolling of the statute of limitations as to his federal constitutional claims.

On the other hand, defendants have not filed a reply which responds to plaintiff's continuing violation argument as to his claim based upon Stephens's alleged false testimony at

the October 11, 2007 parole revocation hearing.[19]  Therefore, any such claim - signed on

September 14, 2010 and filed with this Court on September 21, 2010 (Doc. Ent. 1) - would be

timely.

**4.**     ***HECK V. HUMPHREY*, 512 U.S. 477 (1994) (AS TO COUNTS I - X)**

**a.**     Here, it is prudent to consider the subject matter of each of plaintiff's ten (10) causes of

action.  Doc. Ent. 1 ¶¶ 73-104.  To begin, plaintiff claims that Stephens "physically seized

Plaintiff's person and placed him under arrest under false pretenses and later falsified a police

report, in violation of Plaintiff's Fourth Amendment right against unreasonable searches and

seizures."  Doc. Ent. 1 ¶ 74 (COUNT I).  Plaintiff also claims that Stephens "took adverse actions

against Plaintiff that would deter a person of ordinary firmness from continuing to engage in First

Amendment protected conduct, which was motivated, at least in part, by Plaintiff's First

Amendment protected conduct, [*i.e.*], his choice not to associate with certain people or speak

about certain matters."  Doc. Ent. 1 ¶ 76 (COUNT II).  Citing the Fourth Amendment, plaintiff

claims that defendants "intentionally and maliciously instituted and/or continued criminal

proceedings against Plaintiff by false statements or willful concealment and without probable

cause[,]" and "[t]he criminal proceedings terminated in Plaintiff's favor."  Doc. Ent. 1 ¶¶ 78, 79

(COUNT III).   Plaintiff claims that defendants "participated in illegal and unjustified arrests and

lacked probable cause to do so."  Doc. Ent. 1 ¶ 82 (COUNT IV).  Also, plaintiff claims that

---

[19]Relatedly, my March 2, 2010 report and recommendation stated, in part, "defendant
Worthy's June 29, 2011 motion to dismiss should be denied to the extent plaintiff is attempting to
assert a count of conspiracy against Worthy regarding her handling of his 2008 request to investigate
and prosecute Stephens regarding his allegedly perjured testimony offered at Smith's October [11,]
2007 parole revocation hearing. Furthermore, such denial should be without prejudice to defendant
Worthy's right to file a motion for summary judgment regarding any surviving claim against her."
Doc. Ent. 53 at 10-11.

defendants "acted with the intent of confining Plaintiff, directly or indirectly causing Plaintiff's confinement, a confinement of which Plaintiff was aware, without probable cause." Doc. Ent. 1 ¶ 85 (COUNT V). Also, plaintiff alleges that defendants "had a duty to Plaintiff under statutes, administrative rules and regulations, and a common-law duty of reasonable care to use the criminal process regularly, properly, and honestly[,]" and defendants "breached their duty by intentionally or with gross negligence and with ulterior motives, irregularly or improperly using the criminal-law process against Plaintiff." Doc. Ent. 1 ¶¶ 88, 89 (COUNT VI). Plaintiff further alleges that "Defendants intentionally or recklessly caused Plaintiff extreme emotional distress by their above-described actions." Doc. Ent. 1 ¶ 92 (COUNT VII). Then, plaintiff alleges that Stephens "knowingly or recklessly made a false, material misrepresentation to Plaintiff as a positive assertion with the intent that Plaintiff would act on that assertion, [*i.e.*], that Stephens wanted to meet Plaintiff to discuss an important matter, when Stephens really wanted to falsely arrest Plaintiff[,]" and "Plaintiff relied on Defendant's misrepresentations and was thereby induced to meet Defendant where Defendant falsely arrested him." Doc. Ent. 1 ¶¶ 95-96 (COUNT VIII). Similarly, plaintiff alleges that defendants "knowingly or recklessly made false, material misrepresentation to Plaintiff as positive assertions with the intent that Plaintiff would act or fail to act on those assertions, [*i.e.*], that DPD internal affairs would conduct a fair investigation of Stephens[,]" and that "Plaintiff relied on Defendants' misrepresentations and was thereby induced to continue attempting to obtain relief on his claims through DPD Internal Affairs, instead of filing a civil rights complaint to seek redress from the courts." Doc. Ent. 1 ¶¶ 99-100 (COUNT IX). Finally, plaintiff alleges that "Defendants took concerted action to accomplish the above-alleged violations." Doc. Ent. 1 ¶ 103 (COUNT X).

17

**b.**      In the instant motion, defendants argue that "Plaintiff's unlawful arrest and unlawful imprisonment related claims mount an impermissible collateral attack on the validity of his parole revocation."  Doc. Ent. 41 at 13.  Defendants contend that "[t]he revocation of parole is akin to a criminal conviction in that it triggers incarceration, and a civil challenge to the revocation in a Section 1983 action is subject tot he same requirement as an equivalent suit which calls into question the validity of a criminal conviction - that is, the plaintiff must demonstrate that he or she has succeeded in overturning the revocation before he may pursue a civil action for damages. Accordingly, a parole revocation determination constitutes a conviction for the purposes [of] *Heck*."  Doc. Ent. 41 at 15.

**c.**      In response, plaintiff asserts that his claims "are not barred by *Heck* because they would not necessarily lead to his speedier release."  Doc. Ent. 47 at 2 ¶ 8; *see also* Doc. Ent. 47 at 17-18. According to plaintiff, his claim(s) do(es) not "necessarily demonstrate the invalidity of confinement or its duration[,]" *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).  In addition to relying on *Wilkinson*,[20] plaintiff relies on *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007).[21]  Doc. Ent. 47 at 17.

Apparently referring to his statement that he has been considered for parole several times but has been denied parole "for a variety of reasons in addition to his parole violations[,]" Doc. Ent. 47 at 9, plaintiff contends that "even without the parole violation for gun possession, Plaintiff

---

[20]"[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson*, 544 U.S. at 81-82.

[21]"[S]uccess in Thomas's § 1983 claim would not necessarily affect the duration of his sentence because prison officials would retain discretion regarding whether to grant him parole. Accordingly, the habeas exception does not bar Thomas's § 1983 claim." *Thomas*, 481 F.3d at 440.

had other, unrelated parole violations for which he may have been returned to prison."  Doc. Ent. 47 at 17.  Then, citing Mich. Comp. Laws §§ 791.233 & 791.234,[22] plaintiff contends, "even without the parole violation for gun possession, the parole board may decide to keep Plaintiff in prison just as long as it otherwise would have."  Doc. Ent. 47 at 17-18.

**d.**     The Court should agree with defendants that "[b]ecause a successful due process or probable cause challenge to Plaintiff's parole revocation would necessarily imply the invalidity of that underlying parole revocation, Plaintiff's Section 1983 claims challenging his parole revocation and subsequent incarceration are barred by *Heck*."  Doc. Ent. 41 at 17.  Such conclusion is supported by the decisions of several courts.

     To begin, the Sixth Circuit has recognized that *Heck* "'applies to proceedings that call into question the fact or duration of parole or probation.'"  *Noel v. Grzesiak*, 96 Fed.Appx. 353, 354 (6th Cir. 2004) (quoting *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996)).  The Sixth Circuit explained:  "Noel's complaint is, in essence, a challenge to the length of his sentence, and he has not shown that his conviction, sentence, or PSR have been reversed, expunged, or declared invalid.  Accordingly, Noel has no § 1983 claim."  *Noel*, 96 Fed.Appx. at 354.  *See also Davis v. McGinnis*, No. 98-1224, 1999 WL 313857, at *1 (6th Cir. May 5, 1999) ("claims which challenge the revocation of parole are not cognizable under § 1983 until the parole revocation has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a

---

     [22]Section 791.233 concerns "Granting paroles, provisions, paroles-in-custody; conditions imposed on paroled prisoners, rules[.]"  Section 791.234 concerns "Prisoners subject to parole board jurisdiction; indeterminate sentences; disciplinary time; consecutive sentences; life; public health code offenses; release on parole, procedure and conditions; time of release; review; notice to prosecuting attorney[.]"

writ of habeas corpus.  Davis has not demonstrated the invalidity of his parole revocation by citing either a Michigan state court or a federal habeas corpus decision.") (internal quotations and citations omitted).[23]

Other Circuit Courts of Appeal have reached a same or similar conclusion.  *See, i.e.*, *Villegas v. Galloway*, No. 10-20821, 2012 WL 45417, 2 (5th Cir. Jan. 9, 2012) ("The same is true of Villegas's claims that his parole revocation proceeding was the product of false testimony and evidence tampering, and that his parole was wrongly revoked."); *Johnson v. Murray*, 420 Fed.Appx. 327, 328 (5th Cir. 2011) ("The rule set forth in *Heck* applies to a challenge to the validity of confinement resulting from a parole-revocation hearing.") (citing *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir.1995)); *Johnson v. Fenty*,   No. 10-5105, 2010 WL 4340344, 1 (D.C. Cir. Oct. 1, 2010) ("to the extent appellant seeks monetary damages in connection with the time he was in custody pending his parole revocation hearing in 2005, these claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)."); *Fain v. Morgan*, 255 Fed.Appx. 644 (3d Cir. 2007) ("Fain asserts, however, because his complaint is challenging the constitutionality of his parole review hearings, not the validity of his parole revocation hearing, his claims do not necessarily imply the invalidity of his confinement. We agree."); *Sams v. Crawford*, 197 Fed.Appx. 527, 529 (8th Cir. 2006) ("Notably, no plaintiff seeks an injunction ordering his immediate or speedier release, only a new parole revocation hearing at which Missouri parole officials could exercise their discretion."); *High v. Scott*, No. 99-20359, 2000 WL 329028, 1 (5th Cir. Mar. 15, 2000) ("This action is, at bottom, a challenge to the validity of High's

---

[23]*But see Mathias v. Milan Police Dept.*, 4 Fed.Appx. 245, 247 (6th Cir. 2001) ("even if Mathias' parole revocation was linked to the illegal search, his § 1983 claim would not imply the invalidity of the parole revocation.").

confinement resulting from the parole board's decision to revoke his mandatory supervision. Inasmuch as High does not allege that this decision has been overturned, expunged, or otherwise called into question, it is barred by the principle of *Heck v. Humphrey*, 512 U.S. 477 (1994)."); *Paul v. Rugh*, No. 97-2081, 1998 WL 33882, 1 (10th Cir. Jan. 29, 1998) ("Plaintiff first claims that parole officials Russell, Terrasas and Romero conspired to supply false information in order to revoke his parole.  Plaintiff does not allege that his parole revocation was reversed, declared invalid or otherwise called into question. Therefore, his § 1983 claim is barred.") (internal footnote omitted); *Littles v. Board of Pardons and Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) ("Littles has questioned the validity of the confinement resulting from his parole-revocation hearing, and he has not alleged that the Board's decision has been reversed, expunged, set aside, or called into question, as *Heck* mandates.").

Finally, such has been the same or similar conclusion of this Court.  *See Burkette v. Waring*, No. 10-10230, 2010 WL 2572930, 3 (E.D. Mich. June 22, 2010) (Edmunds, J.) ("Because a successful due process or probable cause challenge to Plaintiff's parole revocation would necessarily imply the invalidity of that underlying parole revocation, Plaintiff's § 1983 claims challenging his parole revocation and subsequent incarceration are barred by *Heck*."); *Jackson v. Waterberry*, No. 10-10031, 2010 WL 5559326, 2 (E.D. Mich. Nov. 30, 2010) (report and recommendation of Randon, M.J.) ("To the extent Plaintiff seeks to challenge the revocation of his parole, he cannot do so through a § 1983 complaint because he has not demonstrated the invalidity of his parole revocation by either a Michigan state court or a federal habeas corpus decision.  To avoid this requirement, Plaintiff argues that he is not challenging his 'actual confinement' but rather the unlawful conduct of Defendants in allowing the fabricated evidence. .

21

. . However, Plaintiff's artful framing of his case does not change the fact that a ruling in his favor would imply the invalidity of his parole revocation, because he alleges that his parole was revoked solely due to the admission of the falsified evidence. Therefore, Plaintiff's action is prohibited by the *Heck* Doctrine and must be dismissed."); *Smith v. Sampson*, No. 2:10-cv-10363, 2010 WL 750195, *2 (E.D. Mich. Mar. 3, 2010) (Duggan, J.) ("In his complaint, Plaintiff appears to be challenging his 2007 parole revocation, claiming that his parole agent submitted a report containing false information and that the parole board relied upon inaccurate information to revoke his parole. Ruling on Plaintiff's claims would necessarily imply the invalidity of his parole revocation (which has not been overturned or otherwise declared invalid) and his current confinement.  Therefore, these claims must be dismissed. . . . The Court notes that a state prisoner may maintain a § 1983 action for procedural challenges to a parole hearing where success in the action would not necessarily call for an immediate or speedier release from custody.  However, Plaintiff's false and inaccurate information claims go to the propriety of the parole revocation decision itself such that ruling on those claims in Plaintiff's favor would necessarily demonstrate the invalidity of his incarceration.") (internal footnote and citations omitted).

Therefore, the Court should conclude that any 42 U.S.C. § 1983 claim against Stephens as a result of his allegedly false testimony at the October 11, 2007 parole revocation hearing is barred by *Heck*.

**5.     TESTIMONIAL IMMUNITY AS TO STEPHENS'S STATEMENTS AT MARCH 2007 CRIMINAL TRIAL & OCTOBER 11, 2007 PAROLE REVOCATION HEARING**

Defendants argue that "[t]o the extent they allege Defendant Stephens testified falsely against Plaintiff in offered judicial proceedings, Plaintiff's claims are barred by the testimonial

immunity doctrine." Doc. Ent. 41 at 2 ¶ 7; *see also* Doc. Ent. 41 at 17. In support of this argument, defendants rely upon *Briscoe v. LaHue*, 460 U.S. 325 (1983).[24] Doc. Ent. 41 at 17.

   Plaintiff admits as much; however, he explains that his claims "do not depend on Stephens's false testimony, which is protected by immunity, and immunity does not apply to claims for declaratory and injunctive relief." Doc. Ent. 47 at 2 ¶ 7. In other words, plaintiff concedes that Stephens "is immune from monetary-damage claims for his testimony against Plaintiff[;]" however, citing *Pulliam v. Allen*, 466 U.S. 522 (1984),[25] plaintiff argues that Stephens "is not shielded by testimonial immunity from Plaintiff's claims for injunctive and declaratory relief." Doc. Ent. 47 at 18.

   If plaintiff is now maintaining that his claims do not depend upon Stephens's allegedly false October 11, 2007 testimony at plaintiff's parole revocation hearing and/or if plaintiff is now seeking only declaratory and injunctive relief against Stephens with regard to that hearing, then such a claim would also be barred by *Heck*. This is so, because, however the claims for declaratory and injunctive relief are phrased by plaintiff - which in plaintiff's original complaint is phrased as "finding that Defendants' actions violated Plaintiff's rights[,]" Doc. Ent. 1 at 14 ¶ 2, or as "requiring Defendants to take such actions as are consistent with a finding that they violated Plaintiff's rights as described in this complaint and as found by the Court[,]" Doc. Ent. 1 at 14 ¶ 3

---

   [24]"This case presents a question of statutory construction: whether 42 U.S.C. § 1983 authorizes a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial. The Court of Appeals for the Seventh Circuit held that witnesses are absolutely immune from damages liability based on their testimony, and rejected the petitioners' contention that government officials who testify about the performance of their official duties may be held liable under § 1983 even if other witnesses may not. We agree with that conclusion." *Briscoe*, 460 U.S. at 326.

   [25]"We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam*, 466 U.S. at 541-542.

23

- any request by plaintiff for declaratory and/or injunctive relief with respect to the October 11, 2007 parole revocation hearing is an attempt to demonstrate the invalidity of the revocation of plaintiff's parole.

**6.    DUTY TO INVESTIGATE AS TO COUNTS IX (FRAUD OR MISREPRESENTATION) & X (CONSPIRACY)**

Defendants characterize plaintiff's fraud or misrepresentation claim (COUNT 9, ¶¶ 98-101) as alleging "a failure to adequately investigate Plaintiff's report of unlawfulness." Doc. Ent. 41 at 17. Citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989),[26] defendants claim that they "have no constitutionally predicated duty to conform their investigation to Plaintiff's dictates or desires." Doc. Ent. 41 at 19. Citing *Doe v. Mayor and City Council of Pocomoke City*, 745 F.Supp. 1137, 1138 (D. Md. 1990),[27] defendants argue that plaintiff's complaint that defendants "refused or otherwise failed to properly investigate his complaints against Stephens" "provides neither a legal nor factual predicate supporting a Section 1983 claim because Plaintiff enjoyed no right to have an investigation conducted." Defendants go on to say that "[a]bsent the existence of such a right, Defendants were without a duty to comply with Plaintiff's requests. Absent the existence of a duty, a failure to investigate is not actionable." Doc. Ent. 41 at 19.

_____

[26]"Petitioner is a boy who was beaten and permanently injured by his father, with whom he lived. Respondents are social workers and other local officials who received complaints that petitioner was being abused by his father and had reason to believe that this was the case, but nonetheless did not act to remove petitioner from his father's custody. Petitioner sued respondents claiming that their failure to act deprived him of his liberty in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We hold that it did not." *DeShaney*, 489 U.S. at 191.

[27]*Doe*, 75 F.Supp. 1138-1140 (Standing).

24

In response, plaintiff explains that his claims "are not predicated on Defendants' failure to investigate his complaint but rather on Defendants' retaliation against Plaintiff, their interference with his access to the courts, and their disparate treatment."  Doc. Ent. 47 at 1 ¶ 6.  Specifically, plaintiff Smith argues that "[d]efendants Muhammad, [Alicia] Smith, and Stair owed Plaintiff a duty not to violate his rights to free speech, access to courts, and equal protection."  Doc. Ent. 47 at 18-19.

Plaintiff agrees that defendants Muhammad, Alicia Smith and Stair "did not owe Plaintiff a federal-law duty to investigate his claims of police misconduct."  He explains that he "does not claim that Defendants violated his federal rights by failing to adequately investigate his claims (although he does claim that they violated his state-law rights when they voluntarily assumed the state-law duty to properly investigate his claims and then failed to do so)."  Doc. Ent. 47 at 18.

Notably, plaintiff maintains that *DeShaney* "does not apply to this case because Plaintiff did not bring a due process claim."  Doc. Ent. 47 at 18.  Instead, plaintiff claims defendants violated his First Amendment right against retaliation "for complaining about police criminal activity," citing *Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008);[28] his First Amendment right to petition the Government for a redress of grievances by "interfer[ing] with the investigation of police criminal activity to deprive him of the means to challenge it in court," citing *Christopher v.*

_____

[28]"In order to prove a claim for retaliation, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights."  *Harris*, 513 F.3d at 518 (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998)).

25

*Harbury*, 536 U.S. 403, 414 (2002);[29] and his right to equal protection of the laws under the

Fourteenth Amendment by "interfer[ing] with his request for investigation of police criminal

activity without rational justification[,]" citing *Village of Willowbrook v. Olech*, 528 U.S. 562,

564-565 (2000).[30]  Doc. Ent. 47 at 18-19.

If the Court agrees with the foregoing report and recommendation - that most of plaintiff's

claims are time-barred and that any claim regarding Stephens's alleged October 11, 2007 false

testimony at plaintiff's parole revocation hearing is barred by *Heck* - then the Court need not

address (1) whether plaintiff's failure to investigate claims are not cognizable as set forth in

*DeShaney* or (2) whether plaintiff's characterization of these claims as defendants having a duty

---

[29]"The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, *e.g.*, *Foster v. Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994); *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984) ("[T]he cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, *e.g.*, *Swekel v. River Rouge*, 119 F.3d 1259, 1261 (6th Cir. 1997) (police coverup extended throughout "time to file suit ... under ... statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here." *Christopher*, 536 U.S. at 414.

However, the Court notes that, since the United States Supreme Court's 2002 decision in *Christopher*, the Seventh Circuit has overruled its decision in *Bell. See Russ v. Watts*, 414 F.3d 783, 783-784 (7th Cir. 2005) (considering "whether the United States Constitution, through the federal civil rights statute 42 U.S.C. § 1983, provides Russ's parents with a cause of action for the loss of the society and companionship of their son[,]" and concluding that "*Bell* was wrongly decided and must be overruled.  We hold that the federal Constitution does not allow a parent to recover in such circumstances, and, on this basis, we affirm the district court's entry of summary judgment in favor of defendants.") (internal footnote omitted).

[30]"Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564.  "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Village of Willowbrook*, 528 U.S. at 564 (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

to not violate his rights to free speech and access to courts (First Amendment) and his right to equal protection (Fourteenth Amendment).

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated:    March 8, 2012

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys and/or parties of record herein by electronic means and first class U.S. Mail on **March 8, 2012**.

                    s/Kim Grimes
                    Acting in the absence of
                    Eddrey Butts, Case Manager